IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFREY JEROME WALKER,
    Petitioner,

vs.                                        Case No.:  5:15cv25/MW/EMT

FLA. DEP'T OF CORR.,
    Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 21).  Petitioner, an inmate of the Florida Department of Corrections ("FDOC"), challenges a prison disciplinary conviction he received at the Northwest Florida Reception Center, Log #110-141590 (*see id.*).  Respondent filed an answer to the habeas petition (ECF No. 26).  Petitioner filed a reply (ECF No. 37).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter,

Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that the habeas petition should be denied.

I.  BACKGROUND AND PROCEDURAL HISTORY

On December 5, 2014, an institutional disciplinary team found Petitioner guilty of disrespect to officials, and imposed a 30-day term of disciplinary confinement (ECF No. 21 at 5–20; ECF No. 26, Ex. B). Petitioner now challenges the disciplinary report ("DR"), Log # 110-141590, on due process grounds (ECF No. 21 at 5–20). As relief, he seeks expungement of the DR from his prison record (*id.* at 14).

Respondent contends the habeas petition is moot, because Petitioner lost no gain time as a result of the DR, and he finished serving his 30-day sentence in disciplinary confinement prior to filing this § 2254 action (ECF No. 26 at 15–17). Respondent additionally contends Petitioner failed to state a cognizable due process claim, because he is a life-sentenced inmate and lost no gain time in connection with the DR (*id.* at 17–23). Respondent also contends Petitioner failed to exhaust his administrative remedies prior to filing his habeas petition (*id.* at 9–14).

II.  DISCUSSION

   A.  Mootness

Whether an action is moot is a jurisdictional matter because it implicates the Article III requirement that there be a live case or controversy.  *See* Bailey v. Southerland, 821 F.2d 277, 278 (5th Cir. 1987).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969).  "Put another way, [a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) (citations and internal quotation marks omitted).

Here, Petitioner was sentenced to thirty (30) days of disciplinary confinement on December 5, 2014, and finished service of his disciplinary sentence on December 31, 2014 (*see* ECF No. 26 at 17, Ex. C, p. 22).  Petitioner filed this habeas action more than one month later, on February 11, 2015 (*see* ECF No. 1 at 14).  Therefore, his challenge to the DR, Log #110-141590, is moot.  *See* Medberry v. Crosby, 351 F.3d 1049, 1053–54 (11th Cir. 2003) (citation omitted) (prisoner's challenge to placement in administrative segregation was moot when filed because he completed imposed term of administrative segregation before he filed habeas petition); *see also, e.g.*, Medberry v. Crosby, 135 F. App'x 333, 334 (11th Cir. 2005) (unpublished but

recognized as persuasive authority) (state prisoner's habeas petition, challenging placement on close management status because of disciplinary problems, was moot where it was not filed until more than one year after he was released from close management); Mathews v. Crews, No. 4:12cv237/WS/CAS, 2014 WL 3908153, at *2–3 (N.D. Fla. Aug. 11, 2014) (unpublished) (dismissing petition for writ of habeas corpus challenging prison disciplinary proceedings as moot when petitioner only received 60 days in disciplinary confinement as a result of the DR and served his time in disciplinary confinement prior to the date he filed the petition); Mathews v. Crews, No. 4:12cv373/WS/CAS, 2013 WL 3991962, at *3 (N.D. Fla. Aug. 5, 2013) (unpublished) (dismissing petition for writ of habeas corpus challenging prison disciplinary proceedings as moot when petitioner only received 15 days in disciplinary confinement as a result of the DR and served his time in disciplinary confinement prior to the date he filed the petition); Batie v. Fla. Dep't of Corr., No. 1:06cv62/MMP/AK, 2009 WL 1490683, at *2–3 (N.D. Fla. May 22, 2009) (unpublished) (because petitioner had completed term of disciplinary confinement at issue at time of filing habeas petition, and he failed to show that subject disciplinary proceeding would affect length of confinement, habeas petition was moot when filed); Stearns-Miller v. McNeil, No. 3:07cv222/MCR/EMT, 2008 WL 4164110, at *2–3

(N.D. Fla. Sept. 5, 2008) (unpublished) (because petitioner had completed term of disciplinary confinement at issue at time of filing habeas petition, his claims challenging disciplinary confinement were moot; likewise, petitioner's challenge to placement on close management was moot, since petitioner was released from close management during pendency of habeas action).

Additionally, Petitioner has not shown that the DR will delay his release from incarceration. Petitioner appears to argue that the DR rendered him ineligible to earn gain-time (*see* ECF No. 37 at 6–9, Exs. A, B, C, D).[1] However, Petitioner is serving a life sentence (*see* ECF No. 26, Ex. A), and is thus not eligible to earn any gain-time. *See* Fla. Stat. 944.275(3)(a) (requiring the FDOC to establish a "tentative release date" for each prisoner <u>sentenced to a term of years</u>, which shall be the date projected for the prisoner's release by virtue of gain-time granted or forfeited as described in Florida's gain-time statute) (emphasis added); <u>Jackson v. Fla. Dep't of Corr.</u>, 790 So. 2d 398, 400 (Fla. 2001) (noting that an inmate who is serving a life sentence is ineligible to earn gain-time); <u>Tal-Mason v. State</u>, 700 So. 2d 453, 455 (Fla. 4th DCA 1997) ("[U]nder a life sentence, [a prisoner] cannot earn gain time, no matter how

---

[1] In addition to records concerning his own gain-time (ECF No. 37, Exs. A, B, C, D), Petitioner submitted a gain-time record of another inmate (*id.*, Ex. E). The gain-time record of another inmate is irrelevant to this case.

exemplary his conduct may be while incarcerated."). The FDOC keeps track of gain-time for life-sentenced inmates in case their sentences are commuted, *see* John v. Crews, 149 So. 3d 149, 150–51 (Fla. 1st DCA 2014); however, such an event is too speculative to show that the DR affected the length of Petitioner's incarceration such that his habeas challenge to the DR presents a live case or controversy.

Additionally, the undersigned recommends rejection of Petitioner's argument that the DR will delay his release from incarceration, by virtue of the fact that the Florida Commission on Offender Review ("FCOR") considers an inmate's institutional disciplinary record in establishing an inmate's presumptive parole release date ("PPRD") (*see* ECF No. 37 at 3–6, Exs. G, K, N).[2] Florida's parole system, which is qualified by the exercise of the FCOR's discretion, creates no legitimate expectation of release on parole and thus no constitutional right to it. *See* Staton v. Wainwright, 665 F.2d 686 (5th Cir. Unit B 1982)[3]; *see also* Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986); Hunter v. Fla. Parole & Probation Comm'n, 674

---

[2] In addition to records concerning his own PPRD (ECF No. 37, Exs. G, K, N), Petitioner submitted parole records of other inmates (*id.*, Exs. F, H, I, J, L, M, O, P ). The parole records of other inmates are irrelevant to this case.

[3] The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions issued prior to October 1, 1981, and all former Fifth Circuit Unit B decisions issued after October 1, 1981. *See* Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

Case No.: 5:15cv25/MW/EMT

F.2d 847, 848 (11th Cir. 1982). The extension of Petitioner's PPRD does not in any way lengthen his sentence. *See* Tooma v. Fla. Parole Comm'n, 612 F. Supp. 2d 1255, 1262 (S.D. Fla. 2009). Further, the FCOR has discretion to give such weight as it might deem necessary, or no weight at all, to the DR. *See* Ferguson v. Buss, No. 4:10cv232/MMP/WCS, 2011 WL 3625703, at *1 (N.D. Fla. June 17, 2011) (unpublished), *Report and Recommendation Adopted by*, 2011 WL 3611407 (N.D. Fla. Aug. 17, 2011). Therefore, the effect of the DR upon Petitioner's future parole prospects is too speculative to satisfy the live case or controversy requirement of Article III.

Because Petitioner fully served his disciplinary sentence prior to filing his § 2254 petition, and he has not shown that the DR affected the length of his incarceration, Petitioner has failed to demonstrate that the live case-or-controversy requirement of Article III is satisfied.

### B. Failure to Demonstrate a Constitutionally Cognizable Liberty Interest

Respondent contends that even if the habeas petition were not moot, Petitioner would not be entitled to relief, because he has no cognizable due process claim (ECF No. 26 at 17–19). Respondent argues Petitioner has not shown that the DR affected a constitutionally protected liberty interest.

To state a due process violation, Petitioner must allege facts showing he was deprived of a constitutionally protected liberty interest. In Sandin v. Conner, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Without either the loss of gain-time credits or "atypical" confinement, the Due Process Clause itself affords no protected liberty interest that invokes procedural protections. *Id.*, 515 U.S. at 487.

Here, Petitioner does not allege facts suggesting the conditions and duration of his 30-day placement in disciplinary confinement were significantly restrictive compared to the general prison population.  See Sandin, 515 U.S. at 485–87 (concluding thirty days of disciplinary segregation did not give rise to a protected liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (concluding that two months in administrative confinement did not constitute deprivation of a protected liberty interest); *see also, e.g.*, Smith v. Reg'l Dir. Fla.

Dep't of Corr., 368 F. App'x 9, 13 (11th Cir. 2010) (unpublished) (inmate failed to state a claim for a due process violation where he was subjected to 15 and 30 days in disciplinary confinement); Shaarbay v. Palm Beach Cnty. Jail, 350 F. App'x 359, 361–62 (11th Cir. 2009) (unpublished) (petitioner failed to show that FDOC's placing him in disciplinary confinement for 30 days was either "atypical" or imposed a "significant hardship") (citing Sandin).

Moreover, Petitioner has not shown that the DR altered his term of imprisonment. As previously discussed, Petitioner's only sentence was a 30-day term of disciplinary confinement. The disciplinary team did not forfeit any earned gain-time; indeed, as a life-sentenced inmate, Petitioner is not eligible to earn gain-time, whether it is "basic" gain-time or any other kind (e.g., "work" gain-time or "extra" gain-time).[4] See, e.g., Ferguson v. Tucker, No. 5:11cv398/RS/EMT, 2012 WL

---

[4] Florida law authorizes the FDOC to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services. See Fla. Stat. § 944.275(1) (2015). If Petitioner had been sentenced to a term of years, he would have been eligible to earn "basic" gain-time at the rate of 10 days per month, had he not incurred the DR. See Fla. Stat. § 944.275(4)(a).

Additionally, if he had been sentenced to a term of years, Petitioner would have been eligible to earn "work gain-time" and "extra gain-time," since the gain-time law in effect at the time of his offense conduct provided for such. See Fla. Stat. §§ 944.275(2)(b), (3)(a) (1981); Waldrup v. Dugger, 562 So. 2d 687 (Fla. 1990).

The "work gain-time" statute applicable to Petitioner provides in pertinent part:

3113884, at *7–8 (N.D. Fla. July 13, 2012) (unpublished) (in light of the fact that the disciplinary decision did not result in the forfeiture of earned gain-time, petitioner was not entitled to the due process protections, pursuant to Sandin; further, because petitioner was a life-sentenced inmate and thus could not earn basic gain time, he had no due process liberty interest in earning it), *Report and Recommendation Adopted by* 2012 WL 3113882 (N.D. Fla. July 31, 2012); Ferguson, 2011 WL 3625703, at *1 (same); John, 149 So. 3d at 151 (life-sentenced inmates in Florida are ineligible to earn gain-time, and although the DOC keeps track of gain-time for life-sentenced

---

> The [Department of Corrections] is authorized to grant additional gain-time allowances on a monthly basis, as earned, up to 1 day for each day of productive or institutional labor performed by any prisoner who has committed no infraction of the rules of the department or of the laws of this state and who has accomplished, in a satisfactory and acceptable manner, the work, duties, and tasks assigned. Such gain-time allowances under this section shall be awarded on the basis of diligence of the inmate, the quality and quantity of work performed, and the skill required for performance of the work.

Fla. Stat. § 944.275(2)(b) (1981).

The "extra gain-time" statute applicable to Petitioner provides in pertinent part:

> An inmate who faithfully performs the assignments given to him in a conscientious manner over and above that which may normally be expected of him, against whom no disciplinary report has been filed within the preceding 6 months, and whose conduct, personal adjustment, and individual effort towards his own rehabilitation show his desire to be a better than average inmate or who diligently participates in an approved course of academic or vocational study may be granted, on an individual basis, from 1 to 6 days per month extra gain-time to be deducted from the term of his sentence.

Fla. Stat. § 944.275(3)(a) (1981).

Case No.: 5:15cv25/MW/EMT

inmates in case their sentences are commuted, such an event is too speculative to give rise to a liberty interest protected by the due process clause).

Furthermore, even if the DR affected Petitioner's ability to earn "tracked" gain-time (i.e., gain-time that the FDOC tracks in the event Petitioner's life sentence is modified to a term of years), the chance that Petitioner's life sentence will be modified to a term of years is too speculative to give rise to a liberty interest protected by the due process clause. *See, e.g.,* Hartley v. Warden, 352 F. App'x 368, 371 (11th Cir. 2009) (unpublished) (petitioner did not have liberty interest in the mere opportunity to earn discretionary gain time); Mathews v. Crews, No. 4:12cv373/WS/CAS, 2013 WL 3991962, at *3 (N.D. Fla. Aug. 5, 2013) (unpublished) (same); Ferguson, 2012 WL 3113884, at *9–10 (same); Blome v. Tucker, No. 1:12cv73/MMP/GRJ, 2012 WL 1700835, at *3 (N.D. Fla. Apr. 12, 2012) (unpublished) (same), *Report and Recommendation Adopted by* 2012 WL 1700706 (N.D. Fla. May 15, 2012); Ferguson, 2011 WL 3625703, at *2–3 (same); Adamson v. McNeil, No. 3:08cv274/MCR/EMT, 2010 WL 4851201, at *2 (N.D. Fla. Oct. 13, 2010) (unpublished) (same); Adamson v. McNeil, No. 3:08cv132/MCR/EMT, 2010 WL 4483399, at *2 (N.D. Fla. Oct. 13, 2010) (unpublished) (same).

The undersigned also recommends rejection of Petitioner's argument that he had a liberty interest in the DR, because it extended his PPRD. The chance that the DR may affect a parole decision is too attenuated to invoke procedural guarantees of due process. *See* Sandin, 515 U.S. at 487 ("Nothing in [State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence . . . , even though misconduct is by regulation a relevant consideration . . . . The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."); *see also* Staton, 665 F.2d at 688 (Florida statutes create no liberty interest in parole); Hunter, 674 F.2d at 848 (same); Jonas, 779 F.2d at 1577 (same); Damiano v. Fla. Parole and Prob. Comm'n, 785 F.2d 929, 932 (11th Cir. 1986) (parole commission's setting of a PPRD does not implicate a liberty interest or invoke due process protection); *see also, e.g.*, Walker v. Fla. Parole Comm'n, 299 F. App'x 900, 901 (11th Cir. 2008) (unpublished) (same); Ferguson, 2011 WL 3625703, at *3 (effect of DR upon petitioner's future parole prospects too speculative to give rise to constitutional claim; Florida Parole Commission has

discretion to give such weight as it might deem necessary, or no weight at all, to DR); Williams v. Tucker, 87 So. 3d 1270, 1271 (Fla. 1st DCA 2012) (citing Sandin and holding that a parole-eligible life sentenced inmate who served 60 days in disciplinary confinement lacked the requisite liberty interest to challenge a disciplinary report).

In sum, Petitioner has failed to show that the DR implicated a constitutionally protected liberty interest; therefore, no federal due process attached to the DR proceeding.

III. CONCLUSION

Petitioner's challenge to the DR issued on December 5, 2014, Log #110-141590), is moot. Additionally, even if Petitioner's release from disciplinary confinement did not render the § 2254 petition moot, Petitioner's due process challenges to DR are without merit. Therefore, the § 2254 petition should be denied.[5]

IV. CERTIFICATE OF APPEALABILITY

---

[5] The court's resolution of the petition on jurisdictional grounds, i.e., mootness, renders it unnecessary to determine the exhaustion issue. Even if Petitioner's release from disciplinary confinement did not render the petition moot, the court may deny the petition on the merits notwithstanding the alleged failure to satisfy the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Case No.: 5:15cv25/MW/EMT

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the amended petition for writ of habeas corpus (ECF No. 21) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18th day of March 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.: 5:15cv25/MW/EMT